UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARY MUTCHLER, as personal
representative of the estate
of David Bradley Mutchler,
ASHLEY MUTCHLER,
CODY MUTCHLER,
JOSHUA MUTCHLER,
and PRESLEY MUTCHLER,

       Plaintiffs,

v.                            Case No. 8:20-cv-630-VMC-AAS

UNITED STATES OF AMERICA,

       Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of

Defendant United States of America's Motion to Dismiss, or,

in the Alternative, for Summary Judgment (Doc. # 52), filed

on March 8, 2021. Plaintiffs Mary Mutchler, Ashley Mutchler,

Cody Mutchler, Joshua Mutchler, and Presley Mutchler

responded on April 20, 2021. (Doc. # 69). The United States

replied on May 3, 2021. (Doc. # 72). For the reasons set forth

below, the Motion to Dismiss is granted.

## I.  **Background**

This case stems from a March 4, 2017, aircraft crash

that killed the only two individuals on board, David Bradley

Mutchler, and his flight instructor, Robert Redfern. (Doc. #

10 at ¶¶ 18-19). Plaintiffs are Mutchler's widow and children. (Doc. # 10 at ¶ 9).

## A. __March 4, 2017, Aircraft Crash__

Mutchler owned a Beechcraft Duke aircraft. (Doc. # 52-2 at ¶ 7; Doc. # 54 at 62:16-17). To maintain his aircraft insurance coverage, Mutchler's insurer required him to complete biennial ground and flight training. (Doc. # 52 at ¶ 1). For this purpose, his insurer approved the use of Access Flight Training Services, a company offering "training to aircraft owner-pilots." (Id. at ¶ 2; Doc. # 52-2 at ¶¶ 1-2). In March 2017, Mutchler hired Redfern, who had worked as an independent contractor for Access Flight from 2011 until his death, and "regularly instructed pilots." (Doc. # 52 at ¶¶ 3, 5; Doc. # 10 at ¶¶ 15-18; Doc. # 52-2 at ¶¶ 4-5).

On their second day of flight training, Mutchler and Redfern departed Sarasota Airport. (Doc. # 10 at ¶ 18). The radar data initially "showed a flight track consistent with air work performed during flight training." (Id.). However, "following an uncontrolled descent, the aircraft impacted terrain and a post-crash fire followed. Both aircraft occupants perished." (Id. at ¶ 19). Plaintiffs contend that Redfern's "inappropriate use of non-standard stall recovery techniques, emergency procedures, and control inputs" caused

the crash, while the United States maintains that there is a lack of record evidence as to the cause of the crash. (Id. at ¶ 20; Doc. # 52 at ¶¶ 67-69). Redfern was ninety years old at the time of the crash. (Doc. # 10 at ¶ 113).

### B.   **Redfern's Pilot Certificates**

Plaintiffs are not suing Redfern. (Doc. # 10). Instead, Plaintiffs posit that the United States should be held liable for Mutchler's death because it acted negligently with regard to the issuance of two of Redfern's pilot certificates. (Id. at ¶¶ 114, 125; Doc. # 69 at 11). The certificates at issue – a second-class medical certificate and  flight instructor certificate – are both regulated by the Federal Aviation Administration ("FAA"). (Doc. # 10 at ¶¶ 21-104).

The FAA has delegated to aviation medical examiners – physicians designated by the Federal Air Surgeon – the role of issuing medical certificates. (Id. at ¶ 30; Doc. # 52-4 at ¶ 16). Plaintiffs concede that aviation medical examiners are not federal government employees. (Doc. # 52 at ¶ 12; Doc. # 69 at 11). Dr. Joseph Flynn, one such medical examiner, issued Redfern's second-class medical certificate in October 2014. (Doc. # 52 at ¶ 7; Doc. # 52-3). That "medical certificate expired on October 31, 2016, more than four months before the" crash in question. (Doc. # 52 at ¶ 8).

3

Under the relevant version of FAA regulations, "[n]o person may exercise the privileges of a medical certificate if the medical certificate has expired." (Id. at ¶ 9 (citing C.F.R. § 61.2(a)(5) (2009)). However, a flight instructor need not possess a medical certificate in all circumstances, such as when he or she is not acting as the pilot in command. (Id. at ¶ 10 (citing 14 C.F.R. § 61.23(b)(5) (2013)). Although Redfern did not possess a valid medical certificate at the time of the crash, Plaintiffs contend that a number of his prior existing medical conditions, including "chronic kidney disease stage II, an obstructing lung abscess, anemia of chronic disease, venous insufficiency, lower extremity edema, malignant neoplasm of the lung, pneumonia, abnormal transaminase/LDH, leukocytosis, diabetes mellitus, possible dementia, and impaired fasting glucose," among other things, precluded Dr. Flynn from issuing Redfern's 2014 certificate in the first place, and required the FAA to reverse Dr. Flynn's certification. (Doc. # 10 at ¶¶ 84-91).

Also at issue is the FAA's issuance of Redfern's flight instructor certificate. (Id. at ¶ 125). Flight instructor certificates are "issued by the FAA [and] are valid for [twenty-four] months from the month of issuance." (Doc. # 52 at ¶ 36 (citing 14 C.F.R. § 61.19(d) (2009)). Once a pilot

has obtained a flight instructor certificate, there are various ways to renew said certificate. (Id. at ¶ 37 (citing 14 C.F.R. § 61.197(a) (2009)).

Redfern was a certified flight instructor since at least 1978. (Id. at ¶ 40). For a number of years thereafter, William Edwards, an aviation safety inspector employed by the FAA, renewed Redfern's flight instructor certificate. (Id. at ¶ 46). Redfern's flight instructor certificate was last renewed by Edwards in November 2015, almost two years before the crash, and provided for an expiration date of December 31, 2017. (Id. at ¶ 51). As previously noted, "Redfern could be a flight instructor without holding a medical certificate." (Id. at ¶ 64 (citations omitted)). According to Plaintiffs, Edwards negligently renewed Redfern's flight instructor certificate "for years without verifying his eligibility" under the relevant FAA regulations. (Doc. # 10 at ¶ 105).

C.  **Procedural History**

Plaintiffs initiated this suit in the Jacksonville Division of this District on February 28, 2020. (Doc. # 1). On March 18, 2020, the Court transferred the case to the Tampa Division, and the case was reassigned to the undersigned. (Doc. # 8). On April 15, 2020, Plaintiffs filed an amended complaint, alleging the following claims against the United

States: negligence of the FAA – airman medical certificate (Count I), and negligence of the FAA – airman certificate (Count II). (Doc. # 10). The United States filed an answer on May 4, 2020, and then an amended answer on May 22, 2020. (Doc. ## 13; 20). Following the entry of the Court's case management and scheduling order, the parties proceeded with discovery. (Doc. # 15).

On March 8, 2021, the United States moved to dismiss the amended complaint for lack of subject-matter jurisdiction, arguing that the United States has not waived sovereign immunity as to these claims. (Doc. # 52). In the alternative, the United States moves for an entry of summary judgment in its favor on the basis that "Plaintiffs cannot prove that any act or omission of the FAA caused the crash." (Id. at 3). Plaintiffs responded on March 29, 2021, and then filed an amended response on March 30, 2021. (Doc. ## 61; 63). Because Plaintiffs' amended response exceeded the page limit and included a statement of material facts as an exhibit, rather than within the confines of the page limit, the Court directed Plaintiffs to amend the amended response. (Doc. # 68). Plaintiffs filed their second amended response on April 20, 2021 (Doc. # 69), and the United States replied on May 3, 2021. (Doc. # 72). The Motion is now ripe for review.

## II. **Legal Standard**

Federal courts are courts of limited jurisdiction. Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case[.]" Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001).

Motions to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). When the jurisdictional attack is based on the face of the pleadings, the Court merely determines whether the plaintiff has sufficiently alleged a basis for subject-matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

Conversely, with factual attacks, the Court assesses the arguments asserted by the parties and the credibility of the evidence presented. See Garcia v. Copenhaver, Bell, & Assocs., 104 F.3d 1256, 1260-61 (11th Cir. 1997). "In resolving a factual attack, the district court may consider extrinsic evidence[.]" Morrison, 323 F.3d at 924 n.5. "A

plaintiff bears the burden of demonstrating that the Court has jurisdiction." <u>Alvey v. Gualtieri</u>, No. 8:15-cv-1861-VMC-AEP, 2016 WL 6087874, at *2 (M.D. Fla. Oct. 18, 2016).

## III. **Analysis**

The United States argues that the amended complaint should be dismissed for lack of subject-matter jurisdiction because: (1) "[t]he United States is not liable for the negligence of either Dr. Flynn or Redfern because they are not government employees" and (2) "[t]he United States has [not] waived sovereign immunity for Plaintiffs' challenge to the FAA's aeromedical and flight instructor certification activities." (Doc. # 52 at 2). Alternatively, the United States moves for summary judgment on the basis that Plaintiffs cannot prove that the FAA caused the alleged injuries. (<u>Id.</u>). The Court will begin by addressing the Motion to Dismiss.

"Plaintiffs cannot sue the United States unless the United States unequivocally has waived its sovereign immunity." <u>Foster Logging, Inc. v. United States</u>, 973 F.3d 1152, 1157 (11th Cir. 2020) (citing <u>Zelaya v. United States</u>, 781 F.3d 1315, 1321 (11th Cir. 2015)). Under the Federal Tort Claims Act ("FTCA"), the United States has waived sovereign immunity for claims for:

injury or loss of property, or personal injury or

> death caused by the negligent or wrongful act or
> omission of any employee of the Government while
> acting within the scope of his office or
> employment, under circumstances where the United
> States, if a private person, would be liable to the
> claimant in accordance with the law of the place
> where the act or omission occurred.

28 U.S.C. § 1346(b)(1). However, "[t]he FTCA was not intended to create new causes of action; nor was it intended as a means to enforce federal statutory duties. . . . Instead, Congress's chief intent in drafting the FTCA was simply to provide redress for ordinary torts recognized by state law." Howell v. United States, 932 F.2d 915, 917 (11th Cir. 1991) (internal citations omitted).

Here, the United States argues that it cannot "be held liable for the alleged negligent acts of Dr. Flynn or Redfern because they were not federal employees." (Doc. # 52 at 15). Plaintiffs respond, however, that they "have not alleged that Dr. Flynn or Redfern were employees of the government. Instead, Plaintiffs are seeking to hold [the United States] directly liable for its own negligence, rather than vicariously liable for the negligence of Dr. Flynn or Redfern." (Doc. # 69 at 11). This represents a marked change from Plaintiffs' amended complaint, which "demand[s] judgment against Joseph D. Flynn, D.O. for all damages permitted by law" in both Counts I and II. (Doc. # 10 at ¶¶ 124, 134).

Given that Plaintiffs effectively concede that the United States cannot be held liable for the actions of either Dr. Flynn or Redfern, the Court turns to the United States' argument that it has not waived sovereign immunity under the discretionary-function exception. (Doc. # 52 at 2).

"Congress . . . has carved out certain exceptions to [the FTCA's] limited waiver [of sovereign immunity], including the discretionary-function exception[.]" Foster Logging, 973 F.3d at 1157. The discretionary-function exception provides that the FTCA's waiver of sovereign immunity does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Id. (quoting 28 U.S.C. § 2680(a)) (emphasis omitted). "In short, the discretionary function exception serves to preserve sovereign immunity for any claim that is based on a federal agency or employee's performance or nonperformance of a discretionary task, even if, in so acting, the agency employee may have abused his [or her] discretion." Zelaya, 781 F.3d at 1329.

The discretionary-function exception "must be strictly construed in favor of the United States." JBP Acquisitions,

LP v. U.S. ex rel. Fed. Deposit Ins. Corp., 224 F.3d 1260, 1263 (11th Cir. 2000) (internal quotation marks and citations omitted). This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984).

Courts must apply a two-part test "in determining whether challenged conduct falls within the discretionary-function exception." Foster Logging, 973 F.3d at 1157. "First, a court examines the nature of the challenged conduct or act to determine whether it is 'discretionary in nature,' meaning that it involves 'an element of judgment or choice.'" Id. (quoting United States v. Gaubert, 499 U.S. 315, 322 (1991)). "In determining whether judgment or choice is present in the particular conduct at issue, the inquiry focuses on 'whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner.'" Zelaya, 781 F.3d at 1329 (quoting Hughes v. United States, 110 F.3d 765, 768 (11th Cir. 1997)).

"If a federal statute, regulation, or policy specifically prescribes a course of action for an employee to

follow, the Government will have failed to show that the action at issue allowed for the employee's exercise of judgment or choice because, in that case, 'the employee ha[d] no rightful option but to adhere to the directive.'" Id. at 1329-30 (quoting Gaubert, 499 U.S. at 322).

"Second, if the challenged conduct involves an element of judgment or choice, a court then determines 'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" Foster Logging, 973 F.3d at 1157 (quoting Gaubert, 499 U.S. at 322-23). "A particular decision will be the kind protected by [this] exception if it is the type of decision that one would expect to be inherently grounded in considerations of policy." Zelaya, 781 F.3d at 1330 (citing Autery v. United States, 992 F.3d 1523, 1530-31 (11th Cir. 1993)). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324. "In making this determination, [courts] do not focus on the subjective intent of the government employee or inquire whether the employee actually weighed social, economic, and political policy considerations before acting. . . . Instead,

[courts] focus on the nature of the actions taken and on whether they are susceptible to policy analysis." <u>Cohen v. United States</u>, 151 F.3d 1338, 1341 (11th Cir. 1998) (internal quotation marks and citations omitted). The Court thus turns to whether Plaintiffs' claims satisfy both prongs of the discretionary-function exception test.

### A. <u>Second-Class Medical Certificate</u>

In Count I, Plaintiffs allege that Dr. Flynn, as well as the FAA and its employees acted negligently with respect to their issuance and review of Redfern's second-class medical certificate. (Doc. # 10 at ¶¶ 114-24). Because Plaintiffs no longer challenge Dr. Flynn's conduct, and the FAA has delegated the issuance of medical certificates to aviation medical examiners such as Dr. Flynn, the Court need only determine whether the FAA's role in reviewing or reversing the issuance of medical certificates falls within the discretionary-function exception. <u>See</u> (Doc. # 10 at ¶¶ 118, 122; Doc. # 52 at ¶ 7); <u>see also</u> 14 C.F.R. § 67.407 ("Subject to limitations in this chapter, the delegated functions of the Federal Air Surgeon to examine applicants for and holders of medical certificates for compliance with applicable medical standards and to issue, renew, and deny medical certificates are also delegated to aviation medical examiners

and to authorized representatives of the Federal Air Surgeon within the FAA."); (Doc # 52-4 at ¶ 33 ("Robert Redfern's airman medical Application for his 2014 airman medical certificate was never selected for a spot-check review by the Surveillance Program Analyst and therefore was not reviewed by my office until after the crash in 2017.")).

## 1. <u>Discretionary Function</u>

Congress enacted the Federal Aviation Act "to promote safety in air commerce." <u>Heller v. United States</u>, 803 F.2d 1558, 1559-60 (11th Cir. 1986) (citation omitted). "The Federal Aviation Act created the FAA, and authorized it to issue certificates to pilots, designating in which capacity they can serve, and attaching any necessary limitations to [e]nsure safety in air commerce." <u>Foster v. United States</u>, 923 F.2d 765, 767 (9th Cir. 1991). Federal regulations delegate the authority of the FAA's administrator "to issue or deny medical certificates . . . to the Federal Air Surgeon." 14 C.F.R. § 67.407(a). Those functions are in turn delegated to aviation medical examiners. <u>Id.</u> at § 67407(b); <u>see</u> <u>also</u> <u>Id.</u> at § 67.405(b) ("Any aviation medical examiner may perform examinations for the second-[class] . . . medical certificate." ). Still, the Federal Air Surgeon maintains the authority "to reconsider the action of an aviation medical

examiner [that] is delegated to the Federal Air Surgeon." <u>Id.</u> at § 67.407(c).

Here, the FAA maintains discretion to review or revoke an aviation medical examiner's issuance of a second-class medical certificate. Plaintiffs have pointed to no regulation requiring the FAA or its employees to review or revoke any particular medical certificate. According to the sworn declaration of Dr. Susan Northrup, the Federal Air Surgeon, "[t]he FAA can reverse an [aviation medical examiner]'s decision to issue an airman medical certificate within 60 days if a spot-check review or other information reveals an improper issuance. . . Although reversal is allowed by 14 C.F.R. § 67.407(c), no statute, regulation, agency policy or procedure mandates reversal of an [aviation medical examiner] issued airman medical certificate." (Doc. # 52-4 at ¶¶ 28-29; Doc. # 52 at ¶ 21).

And, Plaintiffs' citations to their expert Dr. Allen Parmet's deposition are inapposite. (Doc. # 69 at ¶ 21). None of those citations provide that any such requirement existed when Redfern's medical certificate was issued, nor do any of them point to a statute or regulation establishing such a requirement. <u>See</u> (Doc. # 69-3 at 124:2-8, 199:13-20, 253:12-23). Rather, the evidence before the Court points only to

there being no such mandatory review or reversal of second-class medical certificates – even if erroneously issued. See 49 U.S.C. § 44709(a)(1) ("The Administrator of the [FAA] *may* reinspect at any time a civil aircraft, aircraft engine, propeller, appliance, design organization, product certificate holder, air navigation facility, or air agency, or reexamine an airman holding a certificate issued under section 44703 of this title." (emphasis added)); see also Id. at § 44709(b) ("The Administrator *may* issue an order amending, modifying, suspending, or revoking . . . any part of a certificate issued under this chapter if . . . the Administration decides after conducting a reinspection, reexamination, or other investigation that safety in air commerce or air transportation and the public interest require that action; or . . . the holder of the certificate has violated an aircraft noise or sonic boom standard or regulation[.]" (emphasis added)).

Because the regulations allow the FAA to delegate the issuance of medical certificates to medical examiners and do not impose any requirement to review or revoke any such certificate, the Court finds the decision to do so discretionary. See Varig Airlines, 467 U.S. at 819-20 ("When an agency determines the extent to which it will supervise

the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."). Just as a number of courts have found in similar contexts, the FAA and its employees can, in their discretion, review an aviation medical examiner's issuance of a medical certificate, but no statute or regulation requires them to do so. See e.g., Heller, 803 F.2d at 1566-67 (finding the FAA's issuance of medical certificates discretionary in a comparable context); Foster, 923 F.2d at 768 (deeming the Federal Air Surgeon's authority to issue a special issue medical certificate discretionary). Therefore, the first prong of the discretionary-function exception test is satisfied.

### 2. <u>Susceptibility to Policy Analysis</u>

Turning to the second prong of the discretionary-function exception test – whether the actions taken "are susceptible to policy analysis" – the Court finds that they are. Gaubert, 499 U.S. at 325. As the United States explains, "[a]lthough the FAA sets the standards for aeromedical certification, the chief responsibility for compliance rests with the pilot and [medical examiners] authorized to issue medical certificates." (Doc. # 52 at 26). This policy of maintaining discretion over the review of aviation medical

examiners' issuance of medical certificates allows the FAA to maintain its costs such that it can continue to exist and promote aviation safety. See (Doc. # 52-4 at ¶¶ 37-41 ("It is not our mission, nor is it possible, for the FAA to police every pilot or every [aviation medical examiner]. . . . This standards-based oversight has enabled the FAA to keep costs reasonable while promoting aviation and oversight of the safest airspace system in the world. . . . The agency has found that spot-checking helps the agency oversee the aviation medical programs in a cost-effective manner, while allowing pilots to obtain aviation medical advice and certification close to their homes and efficiently.")); see also U.S. Aviation Underwriters, Inc. v. United States, 562 F.3d 1297, 1300 (11th Cir. 2009) (noting "cost and budgetary policy considerations" as satisfying the second prong of the discretionary-function exception test).

Although Plaintiffs aver that no such spot check system exists, they provide no convincing fact in opposition to Dr. Northrup's sworn declaration stating as much. See (Doc. # 52-4 at ¶ 18 ("The spot-check program is designed to monitor [aviation medical examiner] performance.")). And, this spot check system is in line with the regulations providing the FAA with discretion to review the issuance of medical

certificates. Thus, these discretionary functions are "of the nature and quality that Congress intended to shield from tort liability." U.S. Aviation, 562 F.3d at 1299 (internal quotation marks and citation omitted). Plaintiffs have provided no compelling evidence or argument warranting the Court to set aside the presumption that the FAA's acts "are grounded in policy when [it] exercis[es] [its] discretion." Gaubert, 499 U.S. at 324.

Of note, the Court finds the Supreme Court's analysis in Varig Airlines instructive here. There, the Supreme Court was faced with the question of whether the FAA negligently certified "certain aircraft for use in commercial aviation" where the record evidence did not indicate that FAA employees had actually inspected or reviewed the equipment that did not meet FAA standards. 467 U.S. at 799, 814-15. In Varig Airlines, the FAA utilized a spot check system to review such equipment. Id. at 817. In finding that the United States had not waived sovereign immunity as to this function, the Supreme Court explained:

> Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing

and funding. Here, the FAA has determined that a program of "spot-checking" manufacturers' compliance with minimum safety standards best accommodates the goal of air transportation safety and the reality of finite agency resources. Judicial intervention in such decisionmaking through private tort suits would require the courts to "second-guess" the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention in policymaking that the discretionary function exception was designed to prevent. It follows that the acts of FAA employees in executing the "spot-check" program in accordance with agency directives are protected by the discretionary function exception as well.

Id. at 820. Such reasoning is just as applicable here.

Because the FAA and its employees' decision to review or rescind an aviation medical examiner's issuance of a medical certificate is discretionary and susceptible to policy analysis, the United States has not waived sovereign immunity as to this claim. See Foster Logging, 973 F.3d at 1167 (determining that the district court lacked subject-matter jurisdiction over a claim because the discretionary-function exception applied). Accordingly, the Motion is granted as to Count I, which is dismissed for lack of subject-matter jurisdiction.

## B. **Flight Instructor Certificate**

In Count II, Plaintiffs allege that the FAA and its employees acted negligently with respect to the renewal of

Redfern's flight instructor certificate. (Doc. # 10 at ¶¶ 131-32). The United States contends that it has not waived sovereign immunity as to this claim because it also falls within the discretionary-function exception. (Doc. # 52 at 2). Accordingly, the Court must determine whether this function is discretionary and susceptible to policy analysis.

### 1. Discretionary Function

Unlike medical certifications, employees of the FAA themselves issue and renew flight instructor certificates. (Doc. # 52 at ¶¶ 29, 43). Plaintiffs do not provide facts supporting negligence on the part of the FAA or its employees as to the initial issuance of Redfern's flight instructor certificate, but rather as to its later renewals. (Doc. # 10 at ¶¶ 126-32; Doc. # 69 at 24-26). The particular renewals in this case were issued "on the basis of acquaintance." (Doc. # 69 at 24). Thus, the Court turns to whether the FAA's function of renewing a flight instructor certificate on the basis of acquaintance is discretionary.

FAA regulations provide for a number of ways in which an individual can renew his or her flight instructor certificate. See 14 C.F.R. § 61.197(a) As to these renewals, FAA Order 8900.1 "directs the activities of aviation safety inspectors . . . [and] provides direction for tasks related

to . . . investigations and compliance, the aviation safety program, [and] administrative areas." (Doc. # 55-4 at 1). FAA Order 8900.1 distinguishes between the mandatory directives and permissive guidance contained therein:

> **A. Directive Information.** Directive information is information considered directive in nature, contains terms such as "shall," "will," or "must," and means the actions are mandatory. "Shall not" prohibits the action. The use of these terms will leave no flexibility, and inspectors must follow their direction unless otherwise authorized by HQ.
>
> **B. Guidance Information.** Guidance information is information considered guiding in nature and will contain terms such as "should" or "may." These terms indicate actions that are desirable, permissive, or not mandatory, and allow flexibility.

(Id. at 2). Section 5-504 of the Order provides that "[a] person who holds a flight instructor certificate that has not expired may renew that certificate for an additional [twenty-four] calendar months if the holder" presents, among other possible options, the following to an aviation safety inspector: "[a] record that shows that within the preceding [twenty-four] calendar-months, the flight instructor has served in one of the [enumerated] positions in which the [aviation safety inspector] is acquainted with the duties and responsibilities, and has knowledge of its current pilot training, certification, and standards[.]" (Doc. # 52-5 at

9). These enumerated positions include: "company check pilot," "chief flight instructor," "company check airman," "flight instructor in a part 121 or 135 operation," and "[a] position involving the regular evaluation of pilots." (Id.).

Regarding this renewal of flight instructor certificates on the basis of acquaintance, FAA Order 8900.1 states:

> **E. Renewal on the Basis of Acquaintance.** The FAA never intended or permitted that an applicant's flight instructor certificate be renewed merely on the basis of acquaintance. FAA policy has always required [air safety inspectors] to see evidence of the applicant's employment, which should clearly show that applicants are in a position involving the regular evaluation of pilots, *or* to have personal knowledge of an applicant's flight instructing capabilities and qualities before renewing that applicant's flight instructor certificate.

(Id. at 12 (emphasis added)). Thus, by the terms of the Order, one of the two ways in which an air safety inspector can renew an individual's flight instructor certificate on the basis of acquaintance is if the inspector "has personal knowledge" of the individual's "capabilities and qualities." (Id.). The Order does not further prescribe any particular level of personal knowledge required to renew a flight instructor certificate on this basis. (Doc. ## 52-5; 55-4).

Here, the Court finds the conduct at issue – renewing an individual's flight instructor on the basis of acquaintance

– to be discretionary within the meaning of the FTCA. As noted, FAA Order 8900.1 does not prescribe a level of personal knowledge necessary to renew a flight instructor certificate on the basis of acquaintance. See Zelaya, 781 F.3d at 1329 ("In determining whether judgment or choice is present in the particular conduct at issue, the inquiry focuses on 'whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner.'" (citation omitted)). Plaintiffs have pointed to no rule or regulation setting out such a directive.

And, Plaintiffs' own expert, Robbie S. Lasky, a former FAA air safety inspector, conceded that the determination of renewing a flight instructor based on personal knowledge is subjective. (Doc. # 56 at 144:8-15 ("Q. Does an Aviation Safety Inspector have the ability to exercise judgment in determining the personal knowledge that he needs of the flight instructor's capabilities and duties under Section 5-504E to renew a flight instructor certificate? A. I – I – yes, he does, based on – based on his – his, actually his knowledge, and that would be subjective.")).

Additionally, as defined by the Order, the language used with regard to renewal of certificates is permissive. For example, Section 5-504 states that "[a] person who holds a

flight instructor certificate that has not expired *may* renew that certificate for an additional [twenty-four] calendar-months if the holder" presents certain information to the aviation safety inspector, among other options. (Doc. # 52-5 at 9) (emphasis added). This use of "may" signifies that this is guidance information, meaning that it "indicate[s] actions that are desirable, permissive, or not mandatory, and allow flexibility." (Doc. # 55-4 at 2). Furthermore, FAA regulations do not *require* an air safety inspector to investigate or act against any pilot. Cf. Redmon v. United States, 934 F.2d 1151, 1156 (10th Cir. 1991) (holding that an FAA flight safety inspector did not violate regulations by failing to investigate a private pilot's fitness); see also 14 C.F.R. § 13.19 ("Under section 609 of the Federal Aviation Act of 1958 [], the Administrator . . . *may* re-examine any airman. . . . If, as a result of such a . . . . re-examination, or other investigation made by the Administrator . . . the Administrator determines that the public interest and safety in air commerce requires it, the Administrator *may* issue an order amending, suspending, or revoking, all or part of any . . . airman certificate[.]" (emphases added)). Nor do FAA regulations require safety inspectors to review evidence of an applicant's employment. See (Doc. # 52-5 at 11 ("FAA [air

safety inspectors] *should* review evidence of the applicant's employment, which *should* clearly show that the applicant is in a position involving the regular evaluation of pilots. [Air safety inspectors] also *should* have personal knowledge of the applicant's flight instructing capabilities and qualities before renewing that applicant's flight instructor certificate." (emphases added)).

Therefore, the Court finds that FAA aviation safety inspectors maintain discretion as to how to renew an individual's flight instructor certificate and, specifically, as to what level of personal knowledge is needed to renew such a certificate on the basis of acquaintance. See Varig Airlines, 467 U.S. at 819 ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."). Therefore, the first prong of the discretionary-function exception test is met as to Plaintiffs' claim that the FAA or its employees negligently renewed Redfern's certified flight instructor certificate.

## 2. Susceptibility to Policy Analysis

For similar reasons discussed regarding the FAA's review of an aviation medical examiner's issuance of second-class

medical certificates, the Court also finds that the renewal of flight instructor certificates is susceptible to policy analysis. Indeed, "[i]t is difficult to imagine a more policy-driven mission or a more policy-driven set of actions" than the FAA's "issuance and revocation of certificates." Roundtree v. United States, 40 F.3d 1036, 1039 (9th Cir. 1994). The FAA must make policy determinations in allocating its limited resources in advancing its purpose of promoting air safety. See Redmon, 934 F.2d at 1157 (explaining that the FAA "must inherently . . . balance the ultimate goal of air safety against the reality of finite agency resources" (internal quotation marks and citation omitted)). These policy considerations are also grounded in public safety. See Holbrook v. United States, 749 F. Supp. 2d 446, 454-455 (S.D. W. Va. 2010) ("The FAA inspector's judgment concerning the application of inspection standards based on safety considerations is precisely the type of policy decision the discretionary function exception is designed to protect.").

Therefore, the Court finds that the FAA's renewal of flight instructor certificates on the basis of acquaintance is susceptible to policy analysis. See Cosby v. U.S. Marshals Serv., 520 F. App'x 819, 821 (11th Cir. 2013) ("If the decision could objectively be made on policy grounds within

the discretion afforded the decisionmaker, then 'we presume that the act was grounded in policy whenever that discretion is employed.'" (citation omitted)).

Because both prongs of the discretionary-function exception test are satisfied, the United States has not waived sovereign immunity as to Count II. See <u>Rutherford v. United States</u>, 760 F. App'x 787, 793 (11th Cir. 2019) (determining that because the two prongs of the discretionary-function exception test were satisfied, the district court was barred from evaluating the defendant's exercise of judgment). Thus, Count II is dismissed for lack of subject-matter jurisdiction. <u>See</u> <u>Holbrook</u>, 749 F. Supp. 2d at 455 (dismissing a complaint alleging that the FAA acted negligently in issuing various certificates because the United States had not waived sovereign immunity).

Because the Court has granted the Motion to Dismiss as to all counts of the amended complaint, it is without jurisdiction to decide the United States' alternative Motion for Summary Judgment.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant United States of America's Motion to Dismiss (Doc. # 52) is **GRANTED.**

(2) Plaintiffs' amended complaint (Doc. # 10) is **DISMISSED** for lack of subject-matter jurisdiction.

(3) The Clerk is directed to **TERMINATE** any pending motions and deadlines and thereafter **CLOSE** the case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 19th day of May, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE